Carroll L. Griffith v. Commissioner.
Griffith v. Commissioner
Docket No. 1920.
United States Tax Court
1945 Tax Ct. Memo LEXIS 266; 4 T.C.M. (CCH) 317; T.C.M. (RIA) 45096; March 15, 1945
Ben W. Heineman, Esq., for the petitioner. Richard L. Greene, Esq., for the respondent. STERNHAGEN In determining income tax deficiencies of $218.07 for 1939, $635.23 for 1940, and $3,033.48 for 1941, the *267 Commissioner included in the taxpayer's gross income the income of a trust which had been created in 1935 by the taxpayer for his two children. Findings of Fact The taxpayer filed his individual income tax returns for 1939, 1940 and 1941, in the Frist District of Illinois. He is the father of two children, Maxine, born December 7, 1922, and Dean, born December 2, 1926. He is president of Giiffith Laboratories Company, an Illinois corporation engaged in selling supplies to meat packers and bakers. In the years in question his personal income, most of which was as salary from Griffith Laboratories, was about $70,000 to $85,000. Under date of June 1. 1935, he executed the following declaration of trust: Preamble "CARROLL L. GRIFFITH, the Grantor, early in the year 1926 A.D. began to give consideration to plans for the accumulation of a fund for the education of his children, and in July, A.D. 1926 the 'Standard Trust & Savings and Paid up Insurance Plan' was adopted as a method of accumulating the Educational Fund. The 'Plan' became operative on the 7th day of July, A.D. 1926, with the initial deposit in the Standard Trust and Savings Bank of $26.40 and succeeding monthly deposits *268 of a similar amount, until the closing of the Bank, and thereafter with the Central Republic Bank and Trust Co., and lastly, with the City National Bank and Trust Company, all located in the City of Chicago, County of Cook and State of Illinois. "Needs arising from the years of depression necessitated withdrawals, thereby depleting the fund and rendering it useless for the purposes for which it was established, whereupon the 'Plan' was abandoned late in the year A.D. 1934. "Profiting from this experience, the GRANTOR has decided upon a new 'Plan'. NOW THEREFORE KNOW ALL MEN BY THESE PRESENTS: - "That I, CARROLL L. GRIFFITH, a citizen of the United States of America, residing in the City of Chicago, County of Cook and State of Illinois, on this 1st day of June, A.D. 1935, being of legal age and sound mind, declare my intention of establishing a TRUST and do hereby thru this instrument establish a TRUST subject to the terms and conditions of this DECLARATION OF TRUST for the benefit of my children, viz. MAXINE L. GRIFFITH and DEAN L. GRIFFITH DURATION OF TRUST "This TRUST shall terminate the day DEAN L. GRIFFITH becomes thirty years of age, but may be terminated sooner under *269 the following provisions. "The day MAXINE L. GRIFFITH becomes thirty years of age, her interests, as they appear in this TRUST shall be paid over and delivered to her, however should she die before reaching thirty years of age, her interests as they appear in this TRUST shall immediately be paid over and delivered to her issue, but should she die before reaching thirty years of age, and without issue, her interests as they appear in this TRUST shall immediately become a part of the Corpus of this TRUST and subject to its provisions. "The day DEAN L. GRIFFITH becomes thirty years of age his interests, as they appear in this TRUST shall be paid over and delivered to him, however should he die before reaching thirty years of age, his interests as they appear in this TRUST shall immediately be paid over and delivered to his issue, but should he die before reaching thirty years of age, and without issue, his interests as they appear in this TRUST shall immediately become a part of the Corpus of this TRUST and become subject to its provisions. "Should MAXINE L. GRIFFITH or DEAN L. GRIFFITH survive the other, and the survivor dies without issue before reaching thirty years of age, then *270 this TRUST shall be immediately terminated and all property constituting the net worth of this TRUST shall be paid over and delivered to the Estate of the Survivor. TRUSTEE "NOW THEREFORE, I, CARROLL L. GRIFFITH, by virtue of the authority vested in me as the GRANTOR, do hereby nominate and elect, myself, CARROLL L. GRIFFITH, TRUSTEE to serve during the life of this TRUST, or until incapacitated by illness or death, whereupon SYLVIA M. GRIFFITH, if she be at that time living and my wife, shall become TRUSTEE, to serve during the remaining life of this TRUST, or until incapacitated by illness or death or upon her refusal to accept and act, whereupon THE NORTHERN TRUST COMPANY, of CHICAGO, ILLINOIS, shall become TRUSTEE, to serve during the remaining life of this TRUST. POWERS AND DUTIES OF TRUSTEE "CARROLL L. GRIFFITH, TRUSTEE, shall have the absolute custody and control of all TRUST property, shall receive the Corpus, additions to Corpus, income, and accumulations, and deposit the same, in any Bank or Banks, and to withdraw or pay out funds and property within his sole discretion. "He shall have power to Invest, Re-Invest, trade, barter, sell any and all TRUST property, *271 said power to include the right to purchase and sell bonds, notes, stocks, and other securities of every nature whatsoever for cash or on credit or for part cash and part credit and on margin, and to open an account or accounts with Stock and/or Commodity Brokers, for the purpose of buying, selling or dealing in Securities or Commodities on cash or on margin. "In general, he, as TRUSTEE, shall have every power and authority over the TRUST that he would have as an individual and the absolute owner thereof, and the enumeration of specific powers shall not restrict the general powers and authority herein given. "All the rights, powers and duties of CARROLL L. GRIFFITH, TRUSTEE, shall pass to and be vested in his, each, successor TRUSTEE. "In the event the NORTHERN TRUST COMPANY becomes Successor TRUSTEE, it shall keep a strict account of said TRUST and additions and accumulations thereof, and at least once each year shall render a written statement of the true condition of said TRUST, which statement must show among other things, the amount of the TRUST and how it is invested. COMPENSATION OF TRUSTEE "No compensation for services rendered as TRUSTEE shall be paid to CARROLL *272 L. GRIFFITH, TRUSTEE, or Successor TRUSTEE from the funds of this TRUST except: "In the event NORTHERN TRUST COMPANY becomes Successor TRUSTEE, it shall be paid a fair and reasonable compensation for its services, and also be reimbursed for all reasonable expenses incurred in the management and protection of this TRUST. "All payments made by NORTHERN TRUST COMPANY, Successor TRUSTEE, as herein provided, shall be paid from current income of this TRUST, and if current income is insufficient, then the balance may be paid from Income Accounts, and if Current Income and Income Accounts are insufficient, the balance may be paid from Corpus Accounts but in any case, all payments to NORTHERN TRUST COMPANY, Successor TRUSTEE for services rendered shall be considered to be a management expense and not an administration expense. "Current Income as used herein, is defined as the Current Profit and Loss Account. PURPOSE OF TRUST "The GRANTOR creates this TRUST for the purpose of accumulating a FUND to be used for the maintenance, education, care and support of MAXINE L. GRIFFITH AND DEAN L. GRIFFITH without the intervention of any legal guardian or conservator. "In order to carry out *273 these provisions, the TRUSTEE may in his absolute discretion, pay or distribute from the funds of this TRUST any expenses incurred or any funds needed in or for the maintenance, education, care and support of MAXINE L. GRIFFITH AND DEAN L. GRIFFITH. "All such distributions and/or payments shall be paid from Income Accounts, and if Income Accounts are insufficient, the balance may be paid from Corpus Accounts. No payment shall be made to or for the account of either beneficiary, when such payment will lessen or jeopardize the interests of the other beneficiary. "Payments and distributions to the beneficiaries shall be made to such beneficiaries in person, or upon their personal receipt and no interest of any beneficiary shall be assignable in anticipation of payment or distribution, or be liable in any way for such beneficiary's debts or be subject in any way for claims against such beneficiary. "Income Account as used herein, is defined as the account to which the balance in Profit and Loss Account is transferred whenever closed. "Corpus as used herein, is defined as the original grant made by the GRANTOR plus any changes therein. REPORTS AND ACCOUNTS "GRANTOR directs *274 the TRUSTEE to keep and maintain such accounts and records as will enable the TRUSTEE to calculate the true income of this TRUST at the end of each calendar year, and to prepare a statement as of December 31st each year until, and at the termination of this TRUST and at such other times as may be necessary in the judgment of the TRUSTEE to protect the interests of the beneficiaries or either of them. "GRANTOR directs that standard accounting procedure be used in the preparation of these statements, that a reasonable allowance for depreciation be taken on depreciable assets, in order to keep the Corpus of the TRUST intact, and that such statements show the balance in the Corpus, Income, and Profit and Loss Accounts, at beginning and ending of the period and all changes therein during the period, also details of appreciation of the new worth of this TRUST. "GRANTOR directs that the first grant shall ge the initial CORPUS of this TRUST, and that any further grants shall also be CORPUS. "GRANTOR directs that MAXINE L. GRIFFITH and DEAN L. GRIFFITH shall each have an equal undivided interest in the initial CORPUS of this TRUST. "That each beneficiary shall have an Income Account, *275 and "That there shall be only one Profit and Loss Account, the balance in which when closed, when preparing statements herein above provided for, shall be equally divided and credited to or charged to the respective Income Accounts, with the further stipulation that any and all distributions or payments made to or for the benefit of the beneficiaries during any calendar year or fraction thereof, shall be deemed to have been made from Current Income, and if Current Income is insufficient, the balance shall be considered to have been made from Income Accounts, and if current income and Income Accounts are insufficient, then the balance shall be considered to have been made from Corpus Accounts, "GRANTOR empowers the TRUSTEE to make transfers between each beneficiary's respective Income and Corpus Accounts or vice versa, whenever and as often as in the judgment of the TRUSTEE such action seems advisable. GRANT "The GRANTOR hereby sets over and transfers for valid consideration, the business of the Griffith Farrington Laboratories, located in the City of Chicago, County of Cook and State of Illinois, including all its assets of whatsoever nature and kind, free from all debts and *276 incumbrances of any nature or kind, for the uses and benefits of this TRUST as herein defined, and such property shall become and be the initial CORPUS of this TRUST. "The Inventory of the initial Corpus of this TRUST taken June 1, A.D. 1935 at fair and actual values consists of the following items: Cash
$ 426.88
10,500 tablets
2.62
Circulars and labels
10.00
1 Colton 2-B Tablet Machine
25.00
Accounts Receivable
601.69
TOTAL
$1,066.19
GENERAL PROVISIONS "No purchaser at any sale made by the TRUSTEE hereunder shall be obligated to see to the application of the money paid to the TRUSTEE. "The TRUSTEE shall not be required to give bond. "The TRUSTEE shall not be held accountable for any errors in judgment. "GRANTOR reserves the right and power to amend the Declaration of Trust by changing the administrative provisions in order to better carry out his intentions, however, GRANTOR surrenders all right to appoint or name himself a beneficiary under this TRUST and GRANTOR further surrenders all right to revoke this TRUST. (Signed) Carroll L. Griffith" GRANTOR Date June 1, 1935 (Signed) R. C. O'Hair WITNESS The taxpayer was the trustee. He initially *277 contributed to the trust the business, having a value of $1,066.19, of Griffith Farrington Laboratory, a small unincorporated business, of which he was sole owner, which manufactured tablets for dairies for a testing solution to determine acid in milk. The business had nothing to do with Griffith Laboratories. It had no full time employees and its manufacturing consisted of thirty or forty thousand tablets a year which could be made in about eight hours manufacturing time. Its net sales were $346.20 in 1939, $458.70 in 1940, and $636.65 in 1941. A separate set of books was regularly kept for the trust and a separate bank account. After the trust was created the taxpayer contributed money to it from time to time, placing it directly with the broker for the trust account. These money contributions by the taxpayer were $800 in 1939, $1,500 in 1940, and $1,000 in 1941. In 1940, he contributed 1.5625 shares of Seasic, Inc., having a value of $468.75, and in 1941, he contributed.59375 share of Seaslic having a value of $356.25. This corporation had five shares outstanding, which were owned by the taxpayer, his father and brother. The trustee from the beginning maintained a trading account *278 in the name of the trust with Paine, Webber & Co., stock brokers, and the taxpayer also maintained such an account in his name individually. These two accounts or their funds were not commingled. Active trading on margin was carried on in both the accounts. The taxpayer individually did not put up the margin for any of the margin trading in the trustee account, except that his personal contributions to the trust above stated were placed with the brokers. In some instances the broker's statements erroneously omitted the word trustee. No withdrawals or distributions were ever made from the trust. Fiduciary income tax returns were filed by the trustee for 1939, 1940 and 1941, showing net income, respectively, of $463.97, $1,419.42, and $3,928.02. These amounts have been included by the Commissioner in the taxpayer's individual income. Memorandum Opinion STERNHAGEN, Judge: The Commissioner's position is that, following the Clifford case, , the 1939, 1940 and 1941 income of the trust established by the taxpayer in 1935, particularly that from the securities account, is properly to be included in his gross income for the respective years. The trust was in *279 the taxable years carefully carried out according to its terms, and there is nothing in the circumstances of its administration to justify a construction different from the terms of the declaration by which it was created. What the settlor directed in the instrument should be done was in fact done; and nothing was done in respect of the trust property or income other than the instrument provided. So the question at issue may be judged by the instrument itself; and if the terms do not require that the income shall be attributed to the settlor, nothing in the facts and circumstances of its performance or of the conduct of the settlor requires that it shall. The trust was irrevocable; the settlortaxpayer was the trustee; the beneficiaries were his minor children; the settlor could not take the property back; the term was to expire when the younger of the children became thirty, which was 21 years after the date of the instrument; the initial corpus was a small unincorporated business having but little assets, and the later additions were cash contributions by the settlor; the settlor as trustee had unlimited powers, including express power to use the fund of the trust for trading in *280 securities, including marginal trading, and in fact did so with varying results; none of the income or corpus has ever been distributed to either of the beneficiaries, but all has been kept in the trust; the trustee had power to reclassify the corpus and income of each beneficiary in his discretion, but not to shift between beneficiaries; no act or conduct of the settlor-trustee has been other than for the interest of the beneficiaries, although it does not appear how in detail the tablet business now owned by the trust was operated, it simply appears that the settlor sometimes did the work of production, and from the audit reports that the business was in a small way indeed actively operated; the trustee had the right to change the administrative provisions "in order to better carry out his intentions". The Commissioner says that the taxpayer is so completely in control of the corpus and income of the trust that he is in substance the owner and is to be charged with tax upon the income, citing . For this he relies practically entirely upon the taxpayer's activities in relation to the brokerage account and practically not at all upon *281 the negligible activity in relation to the tablet business. The determination cannot be sustained. The taxpayer's control was as a trustee, and he had no right to, and did not attempt to, exercise the trustee powers in derogation of the interests of the minor beneficiaries, which he was bound to protect. His activities as an individual did not impinge upon his duties and responsibilities as a trustee. The latter were kept separate and were separately accounted for in a carefully kept set of books and a bank account. Of great importance is the fact that the settlor did not provide for the return of the corpus to himself or the use of the trust income for himself. Even though his contributions to the trust went directly into the brokerage account, there is nothing to indicate that any part was used for the taxpayer's individual account, although some clerical work in the broker's office was not precise. The Commissioner reads the provision of the instrument relating to the shifting of income and corpus as if it permitted the trustee to transfer the corpus or income from one beneficiary to the other; but a careful reading of the language of the instrument does not admit such an interpretation. *282 The trustee has power to shift within the share of each beneficiary the income attributable to that beneficiary to his corpus or vice versa, but not to shift the corpus of income of one beneficiary to the account of the other. The equal interests of the two beneficiaries is not subject to change at the discretion of the trustee, so that he could take from one and assign to the other; he merely had power to change the classification in each beneficiary's account as betwen corpus and income. This is not a power to "sprinkle" the income or corpus at his pleasure. The power either to accumulate for the beneficiary or to distribute to him is not such a power by reason of which substantial ownership can be ascribed to the taxpayer; nor is the power or right to make additional contributions to the trust. The Commissioner emphasizes the trustee's power, which was actually exercised, to engage in marginal trading in behalf of the trust. We cannot see that this can be regarded as an indication of substantial ownership by the settlor. Such a power given by the settlor of a trust to the trustee is no doubt a precarious power, in that it affords a means of impairing either voluntarily or by *283 chance the security of the property in the trust and thus may operate to the detriment of the interests of the beneficiaries. For that reason, such a power is subject to regid supervision and its exercise to careful scrutiny. But that is beyond the function of this court, and other than a proper scepticism of such a trust, the mere giving of such a power expressly in the instrument and its exercise by the trustee does no more than increase the taxpayer's burden of proving the genuineness and consistent adherence to the fiduciary character of the trust. The Commissioner says that the power of amendment reserved by the settlor was another factor making up his substantial ownership. This power was expressly limited to "changing the administrative provisions in order better to carry out his intentions". It was not a general or unlimited power of amendment but was only a power to change the "administrative provisions", and withheld any power to change the substantive or purposive provisions. The term administrative provisions is not entirely clear, and the taxpayer was permitted over the respondent's objection to testify that the provision was inserted in the instrument in order that, *284 since the Northern Trust Company had not been consulted and was named as a successor trustee in event of the settlor's death during the life of the trust, that corporation, if it should become the trustee, could by amendment effect a more satisfactory method of administering the trust consistent with the settlor's expressed intention. This testimony is no different from what we should construe the provision to mean irrespective of who is the trustee. It is not a power to amend the trust in any substantial respect, such as, for example, to transfer the corpus or income to anyone other than the beneficiaries or otherwise to reduce their interest or the fiduciary's duty. The Commissioner contends that if it be held that the income is not within the taxpayer's gross income under Section 22 (a), it is nevertheless so under Section 166 because properly under the terms of the instrument the funds of the trust may be used by the taxpayer in discharge of his parental obligation for maintenance, education and support of his minor children. Section 166 provides that the taxpayer's income shall include the trust income if in him was vested the power to revest in himself title to any part of *285 the corpus. The taxpayer had no such power, unless it be said that the provision expressing the purpose of the trust as the accumulation of a fund to be used for the maintenance, education, care and support of the children, and the power to distribute for such purposes, is to be construed as a power to revest such accumulation in the settlor-parent. But such a construction would be to give to Section 166 the effect of Section 167, before the recent amendment. By the Revenue Act of 1943, Section 134, amending Section 167, it was expressly provided that the income is not to be attributed to the settlor merely by reason of a possibility or permission that it may be used to discharge such parental obligation, but only if in fact it has been so used. This legislative change would be frustrated if income of the trust permissibly available for the discharge of such use but not actually so used were to be held taxable to the settlor under Section 166, to which the legislative change was not made. The income may not be attributed to the taxpayer by reason of Section 166. We have considered all of the terms of the trust, the circumstances of its creation and the facts and manner of its operation *286 as shown by the evidence, have compared them with the Clifford case, and are unable to conclude that the trust is other than what it purports to be or that the property or income are substantially owned by the taxpayer. The determination including the trust income in the gross income of the settlor-taxpayer is reversed. Decision will be entered under Rule 50.